490 A.2d 261

**Beatrice PIERCE aka Beatrice Bogier**

v.

**STATE of Maryland.**

**No. 720, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 8, 1985.

Michael R. Braudes, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Ann E. Singleton, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt T. Schmoke, State's Atty. for Baltimore City and Perry Lericos, Asst. State's Atty., Baltimore, for Baltimore City on the brief), for appellee.

Submitted before MOYLAN, ADKINS and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Beatrice Pierce[1] was convicted by a jury in the Circuit Court for Baltimore City of manslaughter, the use of a handgun in the commission of a crime and transporting a handgun. She was committed to the custody of the Division of Correction for seven years for the manslaughter conviction, with concurrent sentences of seven years for the use of a handgun, and three years for transporting a handgun. On appeal, Pierce contends that the court erred

1. In refusing to instruct the jury that it could draw a favorable inference due to her voluntary surrender;

2. In instructing the jury relative to the homicide;

3. In instructing the jury concerning the handgun charge; and

4. In excluding favorable character evidence.

We will reverse the judgment based on the exclusion of the character evidence, but will address the other issues raised by Pierce.

The record before us shows that at about 10:00 p.m. on May 5, 1983, Pierce fatally shot Betty Campbell during an altercation at a party held in the home of Pierce's brother. Because of the violent crimes which had occurred in her neighborhood, Pierce carried a handgun for protection. She said Campbell began arguing with her while Pierce applied first aid to the victim's teenage son, who had a severe

---

1. Also known as Beatrice Bogier, which is her married name.

laceration.[2] Campbell was intoxicated and, during the confrontation, started grappling with Pierce. The gun carried by Pierce discharged and Campbell was shot.

Pierce fled from the scene, but voluntarily surrendered to the police the next morning. Campbell was pronounced dead on arrival at the hospital. The jury acquitted Pierce of first and second degree murder charges.

## I. Voluntary Surrender

While the evidence showed that appellant fled the scene after the shooting, additional testimony indicated that she went home to make arrangements for her children. Appellant went to the police station the next morning and explained her involvement in the shooting.

The circuit court granted the State's request for an instruction that the jury could infer from the flight appellant's consciousness of guilt. Defense counsel sought a further instruction concerning her surrender, but the court refused to issue it.

In the normal course of behavior, flight may reflect an awareness of guilt. Thus, evidence of flight becomes relevant and admissible. Proof of voluntary surrender ordinarily is not admissible, because it is not viewed as unexpected behavior in what appears to be a criminal incident. This evidence becomes admissible, however, to rebut testimony concerning flight. *People v. Davis*, 29 Ill.2d 127, 193 N.E.2d 841, 843–44 (1963); *Allen v. State*, 146 Ala. 61, 41 So. 624, 625 (1906); *Cole v. State*, 45 Tex.Crim.R. 225, 75 S.W. 527, 531 (1903).

In the case before us, the court admitted evidence of appellant's surrender without objection. The contention on appeal is a relatively narrow one. Appellant concedes that the evidence of flight sufficiently generated an instruction

2. The cause of the laceration remains uncertain. The boy told people at the party that his mother had cut him, but told the police he had cut his hand on a broken window pane.

on that subject, and does not challenge the content of the instruction. In fact, this Court approved a similar instruction in *Sewell v. State,* 34 Md.App. 691, 695–96, 368 A.2d 1111, *cert. denied,* 280 Md. 734 (1977). Rather, appellant argues that the proffered rebuttal evidence of voluntary surrender supported the granting of an instruction in reference to it. For authority appellant cites 23A C.J.S. *Criminal Law* § 1220 (1961), which states:

> "Where there is evidence that accused gave himself up, the court should instruct, on request, that the jury may consider that fact...."

In addition, she points to *White v. State,* 111 Ala. 92, 21 So. 330 (1896), where the Supreme Court of Alabama said:

> "The unfavorable inference against the prisoner [as a result of flight] would be lessened if he voluntarily returned and surrendered himself to answer the accusation." *Id.,* 21 So. at 332.

In *White, supra,* the Alabama court held that the refusal to instruct the jury to consider the cause of flight as well as "the fact that [the prisoner] went to the police headquarters and gave himself up" was erroneous. 21 So. at 331.

The State responds by mentioning several cases which have held that no error occurred when a court refused to instruct a jury that voluntary surrender may indicate innocence. We do not find these cases controlling for absent prior evidence of flight, we do not deem evidence of voluntary surrender admissible. The State correctly notes that no cases precisely on point exist in Maryland, but proceeds to cite decisions of other jurisdictions to support the ruling of the trial court in this case. In one of these cases, *State v. Haskins,* 316 N.W.2d 679 (Iowa 1982), the defendant argued that the instruction on flight should have included language showing that he voluntarily returned to Iowa and surrendered. The Iowa Supreme Court rejected this claim and explained

> "[F]inally we believe the court's instruction on flight was adequate; it was not necessary to add the language

defendant proposed. Certainly evidence of defendant's voluntary surrender might bear on the inference of guilt arising from evidence of flight. But the instruction as given accorded the defendant the opportunity to present the explanation he sought to urge upon the jury. This is all that is required." *Id.* at 681.

Maryland Rule 757(b)[3] provides that "[t]he court may, and at the request of any party shall, give those advisory instructions to the jury as correctly state the applicable law.... The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given."

■ In the case *sub judice,* the court instructed the jury that

"[F]light by an accused from the scene of a crime, unless adequately explained, may be evidence of consciousness of guilt and can be considered in determining guilt. You may consider and weigh evidence of flight by the defendant with all the other evidence in the case and give it such weight which, in your judgment, it is fairly entitled to receive.

"You may consider the motive which prompted it. While flight is not in itself sufficient to convict, it may be considered by you and given such weight as you may think proper."

The instruction fairly stated the law as it relates to flight, *Sewell v. State, supra,* and included caveats to the inferences which might be drawn from such an action.

We conclude that, despite the absence of a specific instruction regarding voluntary surrender, the subject was "fairly covered by the instructions actually given." Because the trial court did not mention the circumstances surrounding appellant's leaving the scene, it did not need to

---

**3.** Md.Rule 4–325, effective July 1, 1984, replaced Rule 757 and the provisions remain substantially unchanged.

discuss the motive for leaving or the rebuttal evidence of surrender. Md.Rule 757 c.[4]

The instruction clearly stated that flight may constitute evidence of consciousness of guilt and that the jury may consider it "unless adequately explained." In fact, it specifically noted that the motive for the flight may be taken into account. On the limited issue presented here, the jury could consider the voluntary surrender as a part of "all the other evidence in the case." These instructions provided ample room within which to argue the significance of the surrender in rebutting any consciousness of guilt, and defense counsel did so. At least to some extent, the jury agreed, as evidenced by the verdict of not guilty of first and second degree murder.

## II. Murder Instruction

[4] In instructing the jury on the murder charge, the court said:

"In the absence of justification, excuse or some circumstances or [sic] mitigation, the law assumes that all homicides are committed with malice and constitute murder in the second degree."

Appellant excepted to the instruction when given and on appeal contends that it was erroneous. It was not. It was redundant. *Evans v. State*, 28 Md.App. 640, 717–18, 349 A.2d 300 (1975), *aff'd., State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976). Because appellant was acquitted of murder, it is evident that the instruction did not influence the rendition of the verdict. *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976). Thus, the contention does not provide grounds for setting aside the convictions.

## III. Handgun Instruction

■ The court instructed the jury concerning the handgun as follows:

---

4. As of July 1, 1984, Rule 4–325(d).

"Defendant is charged with the use of a handgun in the commission of a crime of violence. Our statute dealing with the use of a handgun in the commission of a crime of violence provides that any person who shall use a handgun in the commission of a felony or any crime of violence as defined in the statute shall be guilty of a separate misdemeanor. I instruct you that the description of the gun used in this case is sufficient to satisfy the statute that it was, in fact, a handgun.

"I further instruct you that murder and manslaughter is [sic] a crime of violence. It is not necessary that the handgun be produced in court . . . ."

On appeal, appellant contends

"By stating that 'I instruct you that the description of the gun used in this case is sufficient to satisfy the statute that it was, in fact, a handgun', the court effectively directed a verdict in the State's favor on this issue. This was error—'For a judge may not direct a verdict of guilty no matter how conclusive the evidence'." (Citation omitted)

While appellant's argument has merit, it does not apply in the circumstances of this case. Appellant freely admitted that she carried a handgun, and a great deal of testimony was given regarding whether the gun had a defective mechanism. No one denied that appellant had a handgun with her or that the gun caused Campbell's injuries; hence, any error in giving the instruction was harmless. *Dorsey v. State, supra.*

### IV. Character Evidence

Appellant introduced testimony of a fellow employee, who was her supervisor. During the questioning, the following colloquy occurred:

"Q. And do you have an opinion, based upon your contacts with her and your observations of her in your capacity, as to whether she is a person who is of an assaultive nature—

MR. LERICOS [Assistant State's Attorney]: Objection.

THE COURT: Sustained.

MR. WALKER [Appellant's trial counsel]: —or a peaceful—

MR. LERICOS: Objection.

THE COURT: Sustained. Is she a law abiding person?

THE WITNESS: Yes.

THE COURT: Is she law abiding?

THE WITNESS: Yes."

Appellant contends on appeal that the court erred in excluding information that would indicate whether she had an "assaultive nature," since lack of intent to harm Campbell was a key element in her defense.

■ Evidence of peaceable character "is relevant where a crime of violence is at issue." *Hurley v. State*, 60 Md.App. 539, 558, 483 A.2d 1298 (1984). Because manslaughter involves an intentional killing of a human being, testimony concerning the defendant's non-assaultive nature meets the relevancy standard. *Id.; Grant v. State*, 55 Md.App. 1, 38–39, 461 A.2d 524 (1983).

■ Inasmuch as appellant was acquitted of the murder charges, we will limit our discussion to the manslaughter charge. The court instructed the jury concerning only voluntary manslaughter, which requires an intent to kill; no reference was made to involuntary manslaughter in which intent is not an element. We infer from this that the jury did not consider involuntary manslaughter and convicted appellant of voluntary manslaughter. Thus, appellant's non-assaultive character was relevant to the defense on the charge. *See Hurley, supra; Grant, supra.*

The court's refusal to allow appellant's witnesses to respond to questions regarding her peaceable or non-assaultive nature was erroneous. Although the two witnesses were allowed to testify as to appellant's general good character and law-abiding nature, we cannot say that the

exclusion of references to her peacefulness was harmless beyond a reasonable doubt. *Dorsey v. State, supra.*

We hold, therefore, that the exclusion of this evidence was reversible error.

JUDGMENTS REVERSED AND CASE REMANDED. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.